J-S07042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAQUIL JONES | : | |
| | : | |
| Appellant | : | No. 981 MDA 2024 |

Appeal from the PCRA Order Entered June 13, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0002349-2020

BEFORE: NICHOLS, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                **FILED: APRIL 24, 2025**

Appellant, Jaquil Jones, appeals *pro se* from the order entered in the Berks County Court of Common Pleas, which dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

The relevant facts and procedural history of this case are as follows. On July 15, 2020, after receiving reports of potential parole violations, parole agents went to Appellant's room in Reading, Pennsylvania.[2] Present in the room were Appellant and Kyara Rosario-Berenguer. During the search, agents found a .40 caliber Glock handgun in a red backpack, along with ammunition. Police were called to the scene and determined that the handgun was owned by Ms. Rosario-Berenguer. Ms. Rosario-Berenguer asked to leave with her

_____

[1] 42 Pa.C.S.A. §§ 4541-4546.

[2] Appellant lived in a row home which contained four single bedrooms, and a shared bathroom and kitchen.

belongings, and when parole agents located her belongings to return, they noticed a tote bag containing a large amount of loose and banded currency, as well as two plastic bottles containing green vegetable matter. Parole agents requested that the police return.

Subsequently, police searched the entirety of the room and discovered a black bag with drugs, later identified as methamphetamine; drug paraphernalia; a tote bag containing marijuana, $34,000.00 in cash, and a 9mm Taurus handgun; and the red backpack which contained men's basketball shorts, and a Glock handgun with loaded magazines and two extended magazines. They further recovered from the room packaging materials, loose cash, a marijuana grinder, and over $5,800.00 in banded cash.

Appellant was arrested and charged with persons not to possess a firearm,[3] possession with intent to deliver a controlled substance ("PWID"), possession of a controlled substance, possession of drug paraphernalia, and conspiracy. Appellant filed a suppression motion, which the court denied on May 19, 2021. On October 22, 2021, a jury convicted Appellant of persons not to possess a firearm, possession of drug paraphernalia, and conspiracy.

On November 4, 2021, the court sentenced Appellant to an aggregate term of 54 months to 10 years of incarceration. Appellant did not file post-

---

[3] The parties stipulated that Appellant had a prior conviction for PWID in Monroe County, Pennsylvania. Further, this charge pertained only to Appellant's possession of the .40 caliber Glock, and Appellant's argument on appeal is solely concerned with that firearm.

sentence motions but did file a timely appeal challenging the denial of his motion to suppress. This Court affirmed Appellant's judgment of sentence on July 12, 2022, and the Pennsylvania Supreme Court denied his petition for allowance of appeal on February 1, 2023. *See Commonwealth v. Jones*, No. 1569 MDA 2021 (Pa.Super. filed July 12, 2022) (unpublished memorandum), *appeal denied*, ___ Pa. ___, 291 A.3d 1201 (2023).

On September 20, 2023, Appellant filed a timely first PCRA petition. The court appointed counsel, who filed a petition to withdraw and a *Turner/Finley*[4] "no merit" brief. On May 23, 2024, the court issued notice pursuant to Pa.Crim.P. 907 of its intent to dismiss Appellant's petition without a hearing, and granted counsel's request to withdraw. Appellant filed a *pro se* response to the motion. On June 13, 2024, the court formally denied the petition. On June 26, 2024, Appellant filed a timely *pro se* notice of appeal.[5] On July 12, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant timely complied on July 23, 2024.

On appeal, Appellant raises the following issue for our review:

---

[4] *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

[5] The trial court docket reflects that Appellant's notice of appeal was filed July 11, 2024. However, as Appellant was incarcerated when he submitted this filing, we use the date listed on the certificate of service for his notice of appeal filing date. *See Commonwealth v. Crawford*, 17 A.3d 1279 (Pa.Super. 2011) (explaining that under "prisoner mailbox rule," we deem *pro se* document filed on date it is placed in hands of prison authorities for mailing).

> I.) Whether PCRA counsel (Douglas J. Waltman) was ineffective for failing to raise a claim, that both trial and direct appeal counsel provided ineffective assistance of counsel when they both failed to properly preserve a claim, that the evidence was insuffic[i]ent and did not establish that [Appellant] either possessed or constructively possessed firearm for which he was convicted for under 18 Pa.C.S.A. § 6105(a)(1).

(Appellant's Brief at 4).

Appellant argues that trial and appellate counsel were ineffective for failing to preserve his claim that the evidence was insufficient to support his conviction. Specifically, Appellant contends that the evidence did not establish that he possessed, constructively or otherwise, the firearm at issue. Appellant asserts: that the firearms discovered in his room upon the search were lawfully owned by his co-defendant, and the Commonwealth knew this; that his co-defendant was never charged with supplying a felon with a firearm; that Appellant was not observed handling the red backpack or firearm stored within; and that nothing in the backpack itself was linked to Appellant. According to Appellant, his sufficiency claim has arguable merit, counsel had no reasonable basis for failing to preserve it, and he was prejudiced by trial counsel and appellate counsel's errors. Appellant also raises a layered claim of ineffective assistance of counsel, arguing that PCRA counsel was ineffective for failing to litigate Appellant's issue regarding trial and appellate counsel's performance. Appellant concludes that all counsel were ineffective on these grounds, and this Court must vacate and remand for a new trial. We disagree.

"Our standard of review of [an] order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Parker*, 249 A.3d 590, 594 (Pa.Super. 2021) (quoting *Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa.Super. 2013)). A petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to relief, and no purpose would be served by any further proceedings. *Commonwealth v. Wah*, 42 A.3d 335 (Pa.Super. 2012). "A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." *Commonwealth v. Smith*, 121 A.3d 1049, 1052 (Pa.Super. 2015), *appeal denied*, 635 Pa. 763, 136 A.3d 981 (2016) (quoting *Commonwealth v. Derrickson*, 923 A.2d 466, 468 (Pa.Super. 2007), *appeal denied*, 594 Pa. 685, 934 A.2d 72 (2007)).

"Counsel is presumed to have rendered effective assistance." *Commonwealth v. Hopkins*, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence

could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has forgone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting *Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." *Commonwealth v. Kelley*, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting *Pierce, supra* at 524, 645 A.2d at 194-95).

The test for deciding whether counsel had a reasonable

- 6 -

basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

*Commonwealth v. King*, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting *Sandusky, supra* at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3, 33, 807 A.2d 872, 883 (2002)).

Appellant complains that all prior counsel were ineffective for failing to preserve a challenge to the sufficiency of the evidence regarding Appellant's persons not to possess a firearm conviction. A challenge to the sufficiency of the evidence "presents a pure question of law and, as such, our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v.*

***Santiago***, 294 A.3d 482, 485 (Pa.Super 2023). The following principles govern our review of a sufficiency challenge:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Sebolka***, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting ***Commonwealth v. Franklin***, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The Uniform Firearms Act provides, in relevant part, as follows:

> **§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms**
>
> **(a) Offense defined.—**

- 8 -

> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

"When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession..." **Commonwealth v. Jones**, 874 A.2d 108, 121 (Pa.Super. 2005). "Constructive possession is the ability to exercise conscious control or dominion over the [contraband] and the intent to exercise that control." **Id**. "The intent to exercise conscious dominion can be inferred from the totality of the circumstances." **Id**. "Constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." **Commonwealth v. Valette**, 531 Pa. 384, 388, 613 A.2d 548, 550 (1992).

> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

**Commonwealth v. Parrish**, 191 A.3d 31, 36-37 (Pa.Super. 2018), *appeal denied*, 651 Pa. 10, 202 A.3d 42 (2019) (internal citations and quotation marks omitted).

Instantly, the PCRA court concluded that, although the firearms had been found in the backpack and purse of Appellant's co-defendant, Kyara

Rosario-Berenguer, Appellant and Ms. Rosario-Berenguer had jointly and constructively possessed the firearms. (*See* Notice of Intent to Dismiss, 5/23/24, at 5-6). The record supports the PCRA court's conclusions. *See Parker, supra*.

Parole Agent Justin Johnston testified that on the date of Appellant's arrest, he and his partner were performing a parole search of Appellant's studio apartment. (*See* N.T. Trial, 10/21/21, at 43, 54). Present in the apartment at the time were Appellant and Ms. Rosario-Berenguer, who was in bed, and who was moved into the hallway. (*See id.* at 45). Agent Johnston began his search by going to the closet, which was straight back through the single room. (*Id.* at 46). The door was slightly opened, and Agent Johnston observed a red backpack wedged between the opened door and wall. (*Id.*). Neither Appellant nor Ms. Rosario-Berenguer claimed the bag, but during the search, Ms. Rosario-Berenger requested the opportunity to retrieve some of her belongings from the apartment. (*Id.* at 47, 51). As Agent Johnston moved the bag, he noticed it felt heavy. (*Id.* at 46). He searched the bag and discovered a handgun, two magazines filled with ammunition, and a 12-gauge drum magazine. (*Id.* at 47). Agent Johnston notified his partner and the Reading Police Department regarding the discovery. (*Id.*). Agent Johnston halted the search until police arrived; Ms. Rosario-Berenguer admitted the firearm was hers. (*Id.* at 47-49, 56).

Parole Agent Lori Lynde was also present for the search of Appellant's home. (*See id.* at 61). She observed Ms. Rosario-Berenguer attempting to

take a brown box out of the room with her, but not the bags. (*Id.* at 67). During her own search, she discovered a separate tote bag containing money and plastic bottles containing a green vegetable matter. (*Id.* at 68). She stopped her search after the discovery. (*Id.*). Ms. Rosario-Berenguer asked to take her belongings with her so that she could go to work, but she initially identified her possessions only as a Coach purse, and a brown tote bag. (*Id.* at 70-72)

Police Officer Christopher Bucklin responded to Appellant's residence after parole agents found the firearm and other items in the room. (*See id.* at 78). During his investigation, Ms. Rosario-Berenguer claimed ownership of the gun and stated she had purchased it. (*Id.* at 80). She provided Officer Bucklin with paperwork and proof of recent purchase of the gun. (*Id.* at 81). As Officer Bucklin prepared to leave, parole agents notified him that they had also found the tote bag containing money and drugs. (*Id.* at 89). At that time, he contacted the Narcotics Unit. (*Id.* at 90).

Detective Darren Smith, of the Narcotics Unit, testified regarding his involvement in the search of the apartment and documentation of the items seized. (*See id.* at 93-94). In addition to the firearm recovered from the red backpack, the bag contained a pair of men's basketball shorts. (*Id.* at 106-108). Further, additional 40 caliber ammunition was discovered inside of a laundry bag in the closet of Appellant's room. (*Id.* at 112-115, 127-28).

Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, sufficient evidence supported Appellant's persons not to

possess a firearm conviction. *See Sebolka, supra*. Despite Appellant's arguments to the contrary, constructive possession may be found in one or more actors where the contraband is in an area of joint control and equal access. *See Valette, supra*. On this record, the evidence established that both Appellant and Ms. Rosario-Berenguer had access to the backpack, as they were the sole occupants of Appellant's room, and that the bag contained men's clothing, further implying that Appellant specifically had control or access to the bag. Additionally, bullets matching the caliber of the ammunition were found in Appellant's closet laundry bag. Under the totality of these circumstances, the Commonwealth demonstrated Appellant's conscious control or dominion over the contraband. *See Jones, supra*. Therefore, because Appellant's sufficiency challenge would merit no relief had it been preserved and litigated, Appellant cannot establish the ineffective of any prior counsel on this ground. *See Poplawski, supra*. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/24/2025

- 12 -